IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cory Gardner, | Case No. 3:06 CV 1961 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| CSX Transportation, Inc., | |
| Defendant. | |

This is an employment discrimination case in which Plaintiff alleges violations of Title VII, Ohio Rev. Code Chapter 4112, 28 U.S.C. § 1981, and Ohio common law. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 26).

## BACKGROUND

In April 1999, Plaintiff Cory Gardner began his employment with Defendant CSX Transportation, Inc. (CSX). Plaintiff started as a longshoreman at Defendant's Toledo Docks facility, and was promoted to supervisor in 2004. Plaintiff remained in this position until he was terminated in 2005 for the late filing, and alleged falsification, of an injury report.

Plaintiff claims he initially injured his right knee in May 2005 when he slipped on iron-ore pellets at work while checking equipment machinery (Gardner Depo. pp. 55-56). He did not tell any of his coworkers about the injury because he "didn't think it was that big of a deal." *Id*. at 60. Plaintiff did not file an official report or see a physician. *Id*. at 69. However, Plaintiff claims he later experienced pain if he bent his knee in a certain direction. *Id*. at 69-70.

Plaintiff next injured his knee in June 2005 while playing basketball at home with his sons. He claims this was a re-aggravation of the May injury, sustained when coming down after a jump-shot. *Id*. at 70, 72. At this point, Plaintiff decided he needed to have his knee checked by a doctor, so he met with his family physician, Dr. Louis Reiner, on July 14, 2005. *Id*. at 73. Dr. Reiner's notes indicate Plaintiff initially experienced some "slight pain" when he slipped at work, but the pain "got considerably worse" after the basketball incident. *Id*. at Ex. D. Dr. Reiner's notes indicate "about a one-month history" of knee pain, which places the origin of his knee injury in the middle of June. *Id*.

On July 15, 2005, the day after he saw Dr. Reiner, Plaintiff claims he sustained another workplace injury. While repairing an iron-ore chute, Plaintiff again slipped and fell on spilled iron ore. *Id*. at 78-79. Once again, Plaintiff did not immediately talk to anyone about his injury, nor did he file an injury report. *Id*. at 86. Only when his supervisor, Paul LeCompte, observed him limping did Plaintiff acknowledge he was injured. *Id*. at 81-82. Plaintiff tried to hide his injury from LeCompte (*id*. at 84), and told LeCompte he re-aggravated a prior injury (LeCompte Decl. ¶ 2). LeCompte specifically asked Plaintiff whether he was injured at work, to which Plaintiff responded "no" (*id*.; Davenport Depo. p. 46).

On July 28, 2005, Plaintiff saw Dr. Gerald Sutherland (Gardner Depo. p. 86). Dr. Sutherland's notes indicate the initial injury to Plaintiff's right knee occurred "[i]n the middle of June 2005" while at work. *Id*. at Ex. E. He further notes Plaintiff "appeared to recover quite adequately" from his initial injury, but while playing basketball with his sons he suffered a twisting injury that triggered the "onset of acute pain." *Id*. Dr. Sutherland's notes, however, contain no mention of the second work-related injury allegedly suffered on July 15, 2005. Dr. Sutherland diagnosed Plaintiff with a

2

medial meniscal tear in his right knee, and recommended arthroscopic surgery. *Id*. at 86-87, Ex. E. Plaintiff was "shocked" that he needed surgery because he knew he would now have to report his injury. *Id*. at 88. In August 2005, Plaintiff contacted Geoff Aughenbaugh, a claims manager for Defendant, about his knee injury. During an initial conversation, Plaintiff told Aughenbaugh he was having knee problems, but did not indicate that his injuries were work-related (*id*. at 94; Aughenbaugh Depo. pp. 10-11). During a subsequent meeting, however, Plaintiff informed Aughenbaugh that he injured his knee while working, and asked whether it was too late to report it (Gardner Depo. p. 97). Aughenbaugh referred Plaintiff to LeCompte to officially report the injury (*id*.; Aughenbaugh Depo. p. 13).

On August 16, 2005, roughly one week after his conversation with Aughenbaugh, Plaintiff reported his injury to LeCompte (Gardner Depo. p. 99). Upon being informed that his injury was work-related, LeCompte instructed Plaintiff to fill out an injury report form (PI-1A form). *Id*. at 103-04. In the injury report, dated August 17, 2005, Plaintiff claimed he injured his knee on July 15, 2005, and that the July injury was a recurrence of an injury sustained on May 9, 2005. *Id*. at Ex. F. The incident report also noted Plaintiff needed surgery. *Id*. LeCompte pulled Plaintiff out of service until he was released by a physician. *Id*. at 106. On August 18, 2005, Plaintiff submitted a "Return to Work Report" form provided by Defendant and completed by Dr. Sutherland (*id*. at Ex. H), but Plaintiff was not permitted to return to work until he received, and recovered from, the surgery recommended by Dr. Sutherland. *Id*. at Ex. L.

In a letter from LeCompte dated August 26, 2005, Plaintiff was notified he was charged with "late reporting of a personal injury that allegedly first occurred May 9, 2005 at Toledo Docks, but which [he] failed to report to [his] supervisor until August 17, 2005." *Id*. at Ex. O. The decision to

3

charge Plaintiff with late reporting was made by LeCompte's supervisor Craig Blinke (LeCompte Depo. p. 28). However, after receiving Plaintiff's medical records and learning of his off-work basketball injury, Plaintiff was charged with falsifying the August 17, 2005 incident report and "failure to provide a complete factual account of the events surrounding [his injury]" (LeCompte Decl. ¶ 3; Blinke Depo. pp. 15-16).

A formal investigation and hearing was initially scheduled for September 1, 2005, and eventually took place on November 8, 2005 (Gardner Depo. pp. 128-129). Plaintiff was represented by a union attorney, presented witnesses on his behalf (including himself), and cross-examined other witnesses. *Id*. at 130-133. The hearing officer, John Riddle, recommended that Plaintiff be found guilty of late reporting, falsifying, and failing to provide a complete account (Blinke Depo. Ex. 30). Based on the transcript of the formal investigation and the recommendation of Riddle, Blinke decided to terminate Plaintiff's employment (Blinke Decl. ¶ 3). On December 5, 2005, Blinke notified Plaintiff via letter he had been found guilty on all charges and, as a result, was dismissed effective immediately (Gardner Depo. p. 133, Ex. P).

Throughout the pendency of Defendant's investigation, Plaintiff filed several charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC). Plaintiff's first charge was filed on September 26, 2005, and complained that he was held out of service without pay because of his race. *Id*. at Ex. V. Plaintiff filed a similar charge on October 14, 2005. *Id*. Finally, Plaintiff filed a third charge on March 9, 2006, alleging that his dismissal was racially motivated. *Id*. at Ex. W.

Plaintiff filed the instant action in the Lucas County Court of Common Pleas on July 17, 2006, alleging: (1) race discrimination under Title VII, Ohio Rev. Code Chapter 4112, and 42 U.S.C. §

4

1981; (2) retaliation under Title VII; (3) wrongful termination in violation of Ohio public policy; and (4) intentional infliction of emotional distress. Defendant removed the action to this Court on August 17, 2006, and it is now before the Court on Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's Motion is granted.

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the Record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## RACE DISCRIMINATION: DISPARATE TREATMENT

Plaintiff alleges he was terminated by Defendant because he is African-American. In order to establish a prima facie claim of race discrimination, Plaintiff may introduce direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Because neither party suggests that direct evidence has been presented in this case, the Court will focus on whether Plaintiff has established an inference of discrimination through circumstantial evidence.

Circumstantial evidence can be used to raise an inference of discrimination by applying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of discrimination exists if Plaintiff can show he: (1) is a member of a protected class;

5

(2) suffered an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside the class, or was treated differently than similarly-situated, non-protected employees. *DiCarlo*, 358 F.3d at 415.

If Plaintiff can establish a prima facie case of discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for Defendant's action. *DiCarlo*, 358 F.3d at 414. If Defendant satisfies this burden, Plaintiff must prove Defendant's reason was a pretext for discrimination. *DiCarlo,* 358 F.3d at 414-15. Pretext can be established by showing Defendant's reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Prima Facie Case

Plaintiff meets the first element of a prima facie case because he is an African-American male. The second element requires Plaintiff to suffer an adverse employment action. An adverse employment action is an action that amounts to "'a materially adverse change' in the terms or conditions of employment." *Freeman v. Potter*, 200 Fed. Appx. 439, 442 (6th Cir. 2006). "[T]he action must have a 'significant detrimental effect' on the employee's status as evidenced by objective factors, not subjective impressions." *Id.* at 442-43 (citations omitted). Neither party disputes that Plaintiff's dismissal constitutes an adverse employment action.

The third element of a prima facie case is Plaintiff's qualification for his position with Defendant. To be qualified for a position, an employee must meet the employer's legitimate expectations and perform to the employer's satisfaction. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). The reasons for termination cannot also be used to disprove

6

Plaintiff's qualifications. The Sixth Circuit has held that the discharge justification cannot be used as evidence that Plaintiff is not qualified. *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 585 (6th Cir. 2002). The discharge justification should only be considered in the later stages of the *McDonnell Douglas* test. *Id.* at 585. Here, there is no indication that Plaintiff was unqualified for his supervisory position with Defendant. Accordingly, the third element is also met.

The final element in a prima facie case of racial discrimination is that Plaintiff was either replaced by a person outside his protected class, or non-protected similarly-situated persons were treated differently than Plaintiff. The parties devote significant briefing to the issue of whether any similarly-situated persons were treated differently than Plaintiff. However, the Record clearly reflects that Plaintiff was replaced with a white employee, Dan Baiden (LeCompte Depo. p. 12). Therefore, the fourth element is satisfied, and Plaintiff has established a prima facie case of race discrimination.

Legitimate, Nondiscriminatory Reason

Once Plaintiff establishes a prima facie case of discrimination, Defendant must articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). Defendant only has a burden of production, not a burden of persuasion, and this Court does not undertake a credibility analysis of Defendant's reason. *Id.*

Defendant dismissed Plaintiff because a formal company investigation found him guilty of late reporting of a work-related injury, falsification of an injury report, and failing to provide a complete account of the events surrounding his injury. Defendant has met its burden of producing a legitimate, nondiscriminatory reason for Plaintiff's dismissal, and the burden now shifts back to Plaintiff.

Pretext

To establish that Defendant's stated reason for dismissal was a pretext for discrimination, Plaintiff must provide "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. Pretext can be established by showing that a defendant's reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Id.* at 1084. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer*, 29 F.3d at 1083).

The first method of proving pretext is to show the nondiscriminatory reason had no basis in fact. To prove pretext under this method, Plaintiff must show more than a dispute about the underlying facts. "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

While Plaintiff admitted he was guilty of reporting his injury late, he argues there is no evidence of falsification "other than conclusions reached by management" based on Dr. Sutherland's medical report (P.'s Resp., pp. 13-14). But Blinke, who made the ultimate decision to terminate Plaintiff's employment, relied on much more than Dr. Sutherland's report. His decision was made after a formal investigation hearing during which much evidence was adduced (Blinke Decl. ¶ 3).

8

Gardner repeatedly gave conflicting accounts of the circumstances surrounding his injury. The reports of Dr. Sutherland and Dr. Reiner both note Plaintiff suffered an initial work-related injury in June 2005 -- although Plaintiff contends it actually occurred in May -- and recovered adequately (Gardner Depo. Ex. D, E). Both reports indicate Plaintiff sustained a severe twisting injury to his right knee while playing basketball with his sons, and Plaintiff admits as much. *Id*. at 70-72. Plaintiff omitted any mention of this basketball injury in his injury report, and it only came to the attention of Defendant when Plaintiff's medical records were obtained. Additionally, when LeCompte observed Plaintiff limping on July 15, 2005, and specifically asked Plaintiff whether his injury was work-related, he responded "no" (LeCompte Decl. ¶ 2). These inconsistent statements, coupled with the admitted late reporting and other deceptive behavior by Plaintiff, are sufficient to demonstrate that Defendant's legitimate, nondiscriminatory reason has a basis in fact. Plaintiff has not provided any evidence which suggests Defendant's decision-makers did not honestly believe Plaintiff failed to provide a complete account of the events surrounding his injury.

The second method of proving pretext is to show the stated reason did not actually motivate the decision to terminate. "To establish pretext under the second *Manzer* method, the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citing *Manzer,* 29 F.3d at 1084). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer,* 29 F.3d at 1084.

9

To show pretext under this prong, Plaintiff would have to show that, even if he falsified his injury report, it was more likely than not that Defendant terminated him because of his race. However, Plaintiff has not proffered any evidence which tends to prove that discriminatory animus was more likely the reason for his termination than Defendant's legitimate, nondiscriminatory explanation.

The final method of showing pretext is to prove the nondiscriminatory reason was insufficient to warrant Plaintiff's dismissal. This method usually consists of "evidence that other employees . . . were not fired even though they engaged in substantially identical conduct." *Id.* at 1084. Plaintiff would have to provide evidence that other parties who were found guilty of falsifying injury reports were not terminated. The compared employees must have "nearly identical" situations and be similar in all relevant aspects. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

Defendant has provided evidence that it has dismissed other employees who falsified injury reports (Blinke Decl. ¶ 4). Indeed, the President of Plaintiff's Union local, Ronald Davenport, testified that prior to the formal investigation hearing, the Union researched public law board awards and concluded that "dismissal from service" was the penalty for falsification of injury reports (Davenport Depo. pp. 43-44). Plaintiff has not identified any employees who engaged in "substantially identical conduct" but were not terminated. Therefore, Plaintiff fails to prove pretext under the third, and final, method. In sum, Plaintiff failed to establish that Defendant's stated reason for dismissal was mere pretext for discrimination. Accordingly, Plaintiff's claim for race discrimination under Title VII fails, and summary judgment is appropriate.

<u>Ohio Rev. Code Chapter 4112 and Section 1981</u>

The same analysis applied to Title VII claims is applied to claims arising under Ohio Rev. Code Chapter 4112. *Little Forest Med. Center of Akron v. Ohio Civ. Rights Commission*, 61 Ohio St.3d 607, 609-10 (1991). Further, the same *McDonnell-Douglas* analysis applied to claims arising under Title VII are applied to claims under 42 U.S.C. § 1981. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992). As the Court stated above, Plaintiff has failed to show that Defendant's stated reason for dismissing him was pretext for racial discrimination under Title VII *McDonnell-Douglas* analysis. Therefore, Defendant is entitled to summary judgment on these claims as well.

**RETALIATION**

Title VII also prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Plaintiff may establish a prima facie case of retaliation by showing that:

1. he engaged in an activity protected by Title VII;

2. Defendant knew of his exercise of his civil rights;

3. thereafter, Defendant took an employment action adverse to him; and

4. there was a causal connection between the protected activity and the adverse employment action.

*Randolph v. Ohio Dept. Of Youth Services*, 453 F.3d 724, 736 (6th Cir. 2006). Once Plaintiff establishes a prima facie case of retaliation, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Canitia v. Yellow Freight Sys., Inc*., 903 F.2d

11

1064, 1066 (6th Cir. 1990). The burden then shifts back to Plaintiff to demonstrate that the proffered reason is a pretext. *Id.*

Plaintiff established the first three elements of a prima facie case of retaliation. He filed an EEOC charge on September 25, 2005,[1] a protected action; Defendant knew he filed the charge; and he was subsequently terminated, an adverse employment action. The Court now turns to the fourth element, a causal connection between Plaintiff's filing of an EEOC charge and his termination from CSX.

"A causal link requires the plaintiff to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990) (citations omitted); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) ("plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action"). "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* at 563.

Plaintiff asserts that the temporal proximity between the filing of his EEOC charge (September 26, 2005) and his dismissal (December 5, 2005) is, by itself, sufficient to establish a causal connection. There is conflicting Sixth Circuit case law on this point; indeed, each party has proffered a Sixth Circuit case that solidly supports its position. *Compare Singfield v. Akron Metro. Hous. Auth.*,

---

[1] As noted earlier, Plaintiff also filed EEOC/OCRC charges on October 14, 2005 and March 9, 2006 (Gardner Depo. Ex. V, W), but the Complaint only alleges retaliation related to Charge No. 220-2005-01881, filed September 26, 2005 (Compl. ¶ 12).

12

389 F.3d 555, 563 (6th Cir. 2004) (temporal proximity of three months between the filing of an EEOC charge and termination "is significant enough to constitute sufficient evidence of a causal connection"), *with Nguyen*, 229 F.3d 566 ("temporal proximity alone will not support an inference of retaliatory discrimination"). Noting this disparity, this District has held that "although temporal proximity is relevant to the question of causation, standing alone, it is only sufficient to establish an inference of retaliation 'when there is no compelling evidence to the contrary.'" *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 691 (N.D. Ohio 2006) (Manos, J.) (quoting *Steiner v. Henderson*, 121 Fed. Appx. 622, 625-27 (6th Cir. 2005)).

In the instant action, despite the temporal proximity between the EEOC charge and Plaintiff's termination (less than three months), there is "compelling evidence to the contrary." Specifically, as discussed above, Defendant had strong evidence to find that Plaintiff falsified his injury report and failed to provide a complete account of the events leading to his injury. Further, it is compelling that Plaintiff was charged with malfeasance on August 26, 2005, and Defendant requested that Plaintiff attend a formal investigation hearing on September 1, 2005. Yet Plaintiff did not file his EEOC charge until approximately one month later (September 25, 2005). Thus, the proceedings leading to Plaintiff's dismissal had been set in motion **before** Plaintiff engaged in the protected activity. In the face of this evidence, temporal proximity alone is insufficient to establish a causal connection between Plaintiff's protected activity and his dismissal. Accordingly, Plaintiff has failed to establish a prima facie case of retaliation under Title VII.

Further, even if Plaintiff could establish a prima facie case of retaliation, the Court has already held Plaintiff has not proven Defendant's stated reason for dismissal was mere pretext for

13

discrimination. Accordingly, for this reason too, summary judgment is appropriate on Plaintiff's retaliation claim.

**WRONGFUL DISCHARGE IN VIOLATION OF OHIO PUBLIC POLICY (*COOLIDGE*)**

Defendant next challenges Plaintiff's claim for wrongful discharge in violation of Ohio public policy. Plaintiff contends his public-policy tort claim should proceed under *Coolidge v. Riverdale Local Sch. Dist.*, 100 Ohio St.3d 141 (2003).

In *Coolidge*, the plaintiff was a school teacher who was injured by a student and received temporary total disability (TTD) workers' compensation benefits from the state. She was terminated after her accrued leave was depleted despite the fact she was unable to return to work and still receiving temporary total disability benefits. The court held that although the plaintiff's termination was not retaliatory, it violated the public policy embodied in Ohio's workers' compensation law. *Id.* at 150. Therefore, the court held "that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition." *Id.*

Defendant contends it is entitled to summary judgment on Plaintiff's *Coolidge* claim because Plaintiff is covered by a CBA and therefore cannot maintain an action for wrongful discharge in violation of public policy. In support, Defendant cites *Haynes v. Zoological Society of Cincinnati*, 73 Ohio St.3d 254 (1995), which held that union employees covered by a CBA cannot bring claims for wrongful discharge in violation of public policy. This argument is belied by the fact that the plaintiff in *Coolidge* was covered by a CBA. *Coolidge*, 100 Ohio St.3d at 141-42. Indeed, this Court has held that "the Ohio Supreme Court in *Coolidge* created an exception to the *Haynes* bar in cases involving persons, including union members, receiving temporary total disability workers

14

compensation payments." *Clement v. Sypris Technologies*, No. 3:05-CV-7317, 2006 U.S. Dist. LEXIS 25125, at *6-*7 (N.D. Ohio May 1, 2006) (Carr, C.J.) (citing *Urban v. Osborn Mfg., Inc.*, 165 Ohio App.3d 673, 677 ("The *Coolidge* court did not give a blanket extension to all employees covered by a CBA, but found that the workers' compensation system redefined the employment relationship")). Therefore, Plaintiff's claim is not barred simply because he was a union employee covered by a CBA.

Plaintiff's *Coolidge* claim fails, however, because he was not discharged based solely on the violation of an attendance policy. While *Coolidge* carved out an exception to the *Haynes* bar on public-policy tort claims by union employees, this exception only applies when an employee receiving temporary total disability payments is discharged **solely** on the basis of absenteeism. *Coolidge*, 100 Ohio St.3d at 150. In the instant action, Plaintiff makes no such claim. In fact, Plaintiff admitted as much in his deposition (Gardner Depo. p. 178):

> Q: Do you believe your termination had anything to do with your absence from work because of an injury to your knee?
>
> A: No, it wasn't because of my absence from work.

Accordingly, Plaintiff's *Coolidge* claim fails on its merits, and summary judgment is appropriate.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's final claim is for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress in Ohio, a plaintiff must establish that:

1. the actor intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff;

2. the conduct complained of has been so outrageous in character and extreme in degree as to go beyond all bounds of decency;

15

    3.        the conduct proximately caused the plaintiff's injury; and

    4.        the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Ashcroft v. Mt. Sinai Medical Ctr.*, 68 Ohio App.3d 359, 366 (1990). *See also Yeager v. Local Union 20 of Teamsters*, 6 Ohio St.3d 369 (1983).

Plaintiff has not put forth evidence which established any of the elements of this tort. Most notably, Plaintiff cannot point to any specific extreme and outrageous behavior for which Defendant is liable. Further, Plaintiff has put forth no evidence he suffered severe emotional injury. Therefore, summary judgment is granted as to Plaintiff's claim for intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (Doc. No. 26) is GRANTED.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

August 14, 2007